Theodore X. A. SEWELL, Appellant,

v.

Paul F. PEGELOW, Superintendent, Lorton Reformatory, Lorton, Virginia, S. A. Knupp, Assistant Superintendent, K. A. Weakley, Assistant Superintendent, Appellees.

Joseph X. WATSON, Appellant,

v.

Paul F. PEGELOW, Superintendent, Lorton Reformatory, Lorton, Virginia, S. A. Knupp, Assistant Superintendent, K. A. Weakley, Assistant Superintendent, Appellees.

Nos. 8582, 8583.

United States Court of Appeals
Fourth Circuit.

June 25, 1962.

PER CURIAM.

See also 291 F.2d 196.

Before SOBELOFF, Chief Judge, and HAYNSWORTH and BOREMAN, Circuit Judges.

ORDER

Upon consideration of a letter from counsel for both parties dated June 18, 1962, and the assurances made therein, it is this 25th day of June, 1962,

ORDERED that the appeal be and it is hereby Dismissed, without prejudice to the right of the plaintiffs to reinstitute proceedings in the District Court should the assurances given not be promptly effected. See attached letter of counsel. [Appendix].

APPENDIX

June 18, 1962

The Honorable Simon E. Sobeloff
Chief Judge of the United States
    Court of Appeals for the Fourth Circuit Post Office Building
Asheville, North Carolina

Re: Sewell v. Pegelow, et al., Fourth
    Circuit No. 8582
    Watson v. Pegelow, et al., Fourth
    Circuit No. 8583

Dear Chief Judge Sobeloff:

As the Record shows, the Commissioners of the District of Columbia on November 25, 1953, issued a policy order regarding nondiscrimination which applied to all officials of the Department of Corrections, including the Superintendent of Lorton Reformatory and his two assistants, defendants in the above actions. As you know, appellants maintain that there exists a question whether the Superintendent of Lorton Reformatory and his assistants have made available to inmates who are members of the Muslim sect rights and privileges of worship which are afforded to inmates of other religious persuasions. Although counsel for appellees is of the opinion that the record in the above cases does not fully reflect the efforts of the Superintendent and his assistants to accommodate the practice of the Muslim faith in the religious program at the Reformatory, he is authorized by Appellees, with the concurrence of the Commissioners of the District of Columbia, to give the following assurances to the Court:

(1) Paragraph (b) of Part III of the Policy Order of the District of Columbia Government Regarding Nondiscrimination of November 25, 1953, as amended on March 4, 1954; April 7, 1955; and May 23, 1962; reads as follows:

"Any person who has been aggrieved because the policy of this section has not been adhered to may, within ten days, file with the Secretary of the Board of Commissioners a written statement of the alleged violation setting forth specifically and in detail the facts of the matter. The Commissioners will thereafter cause an investigation to be made and, in the event that the complaint is justified, will take appropriate action."

This order will be complied with, and complaints will be forwarded to the Secretary of the Board of Commissioners without alteration or delay.

(2) An inmate of the Reformatory who is not recorded as a member of the Muslim sect will be so recorded upon his voluntary request to the Superintendent. Any such inmate will be permitted the same privileges as are afforded to inmates who were recorded as members of the Muslim sect upon their admission to the Reformatory.

(3) The Superintendent will make available to members of the Muslim sect copies of a translation of the Koran, previously indicated by them as acceptable to their sect, on the same basis as copies of the Bible are made available to inmates of the Catholic and Protestant faiths. Inmates professing adherence to Islam will be permitted to receive through established regulations and channels printed or otherwise duplicated copies of prayer books produced under authority of the head of that sect.

(4) Muslim inmates will be permitted to correspond with Muslim ministers with whom they have had personal contact or who are otherwise approved. Such approval will be granted, within allowable mail limitations, to correspondence with Elijah Muhammad or Lucius X. Brown, the local minister. Such correspondence will have to be initiated in conformity with normal prison procedures, including usual and generally applicable censorship.

(5) Muslim inmates will be permitted to meet periodically for prayer, study, and discussion of their faith at reasonable times and places. Upon request, the Superintendent will extend to the local minister of the Muslim sect the privilege of conducting religious meetings at the Reformatory to the same extent that this privilege is extended to ministers of other religious persuasions.

(6) Muslim inmates may carry on their persons non-dangerous medals showing the Islamic star and crescent. Such medals may be displayed in the same manner and to the same extent as Christian and other religious medals are permitted to be displayed. Inmate welfare funds will be made available to furnish medals to Muslims on the same basis as medals are furnished to inmates of other religious persuasions.

(7) The right of Muslim inmates to pray in accordance with the practice of their faith is recognized except when such prayer interferes with the regular prison routine, including, but not limited to, the hours set aside for sleep in the dormitories.

(8) For the present, inmates are not to be permitted to subscribe to the Los Angeles Herald Dispatch. This decision is subject to reevaluation at a later date.

(9) A Muslim inmate may discuss his religion with other inmates only in the same manner and to the same extent as inmates of Christian or other persuasions are permitted to discuss their religions with other inmates.

(10) These policies will be made known to the inmates affected.

(11) The Court will understand that the officials of the Government of the District of Columbia responsible for the administration of the penal institutions cannot anticipate all problems that may arise, and for this reason must reserve the power to make changes in the procedures and practices proposed above. However, any changes so made may be appealed to the Commissioners through the Secretary to the Board of Commissioners in the same manner and with the same assurances as contained in paragraph number (1) hereof.

(12) It is understood that Appellants, by accepting these assurances, do not waive any rights that they may have to file in the District Court any action to redress any grievances they may have.

In the opinion of counsel for appellants and for appellees, these assurances make unnecessary the entry by this Court or

by the District Court of the injunction sought by the plaintiffs.

Respectfully submitted,

For Appellees:

Harold H. Greene
———————————
Harold H. Greene

For Appellants:

George Blow
———————————
George Blow

The Commissioners of the District of Columbia concur:

F. J. Clarke
———————————
Frederick J. Clarke,
Commissioner